No. 97-635

IN THE SUPREME COURT OF THE STATE OF MONTANA

2000 MT 283

IN THE MATTER OF THE ESTATE

OF FRED W. ZEMPEL, JR.,

Deceased.

APPEAL FROM: District Court of the Sixteenth Judicial District,

In and for the County of Rosebud,

The Honorable Joe L. Hegel, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

Michael K. Rapkoch, Felt, Martin & Frazier, Billings, Montana

For Respondent:

Gary Ryder, Hysham, Montana

Submitted on Briefs: May 25, 2000
Decided: November 14, 2000

Filed:

_____

Clerk

Justice William E. Hunt, Sr. delivered the Opinion of the Court.

¶1 On September 4, 1997, the Sixteenth Judicial District Court, Rosebud County, issued a memorandum and order appointing Kathleen Newman (Newman) personal representative of the estate of Fred W. Zempel, Jr. (Zempel). Deborah K. Palmer (Palmer) appeals this order. We affirm.

¶2 The only issue before us is whether or not the District Court erred in appointing Kathleen Newman as personal representative of the estate of Fred W. Zempel, Jr.?

## FACTUAL BACKGROUND

¶3 Zempel was a longtime resident and rancher in Rosebud County, Montana. Over the years, he developed a personal and business relationship with Daryl and Kathleen Newman. The Newmans had leased a ranch from Zempel for more than eighteen years, and they took care of him during his final illness.

¶4 On October 4, 1996, Zempel was diagnosed with lung cancer. On October 10, 1996, Zemple executed his last will and testament. He named his daughter, Palmer, who resides in Tucson, Arizona, as his sole devisee. He also named Newman as personal representative of his estate. On the same day, he also executed a power of attorney appointing Newman as his attorney in fact.

¶5 On October 24, 1996, Zempel and the Newmans entered into an option agreement where the Newmans would buy the ranch land they were leasing from him. Zempel had expressed his reasons for selling this property to the Newmans to another longtime friend, Max Bauer, who testified that Zempel did not believe his daughter, Palmer, could operate the place, and he wanted to make sure the ranch stayed in good hands.

¶6 On December 31, 1996, Newman, acting pursuant to the power of attorney, executed a contract for deed and lease which transferred the ranch property to her and her husband. Zempel died on January 15, 1997.

¶7 The estate of Zempel was opened on January 16, 1997, with a petition for appointment of Palmer as special administrator. The petition was filed without notification to Newman and without any sworn facts in support of the petition. The District Court appointed

Palmer as the special administrator based on the *ex parte* application.

¶8 On January 27, 1997, Newman filed a petition for a formal probate of the will and appointment of personal representative. The petition for appointment was filed in conjunction with a motion to set aside the *ex parte* order appointing Palmer as special administrator of the estate.

¶9 The District Court set a hearing date on this matter. The first part of the hearing was held on February 10, 1997, and the hearing was concluded on February 13, 1997. Palmer filed an objection to the appointment of Newman as personal representative on February 13, 1997. The matter was deemed submitted to the District Court.

¶10 On September 4, 1997, the District Court issued a memorandum and order. Its order terminated the appointment of Palmer as special administrator, and appointed Newman as personal representative. In the memorandum portion of the order the District Court explained that:

> From the evidence presented to date, it appears that Fred W. Zempel, Jr. died testate, with his will naming Ms. Newman as personal representative and Ms. Palmer as alternative personal representative. The evidence presented also indicates that Mr. Zempel wanted to sell his ranch to Ms. Newman and her husband and that Ms. Newman, acting pursuant to a power of attorney, attempted to finalize a sale of the property before Mr. Zempel's death.
>
> There has been no credible evidence indicating that Mr. Zempel was incompetent or acting under any undue influence at the time he executed his will or any of the other documents including an Option to Buy. . . .
>
> . . .
>
> Given Mr. Zempel's expressed wishes that the ranch be sold to the Newmans and Ms. Palmer's acquiescence in such transaction so long as the transaction can qualify for "special use" valuation, and given Ms. Newman's willingness to reframe the transaction accordingly, the Court does not find a conflict of interest on the part of Ms. Newman so long as the parties proceed along those lines.

The District Court further ordered that "[a]ny real estate transaction must be approved by

the Court after notice and hearing."

¶11 On October 2, 1997, Palmer appealed the District Court's September 4, 1997 order. This appeal was held in abeyance by stipulation of the parties, but the matter is now before this Court.

## STANDARD OF REVIEW

¶12 We review a district court's decision regarding the removal of a personal representative to determine if the district court abused its discretion. In re Estate of Haagenson (1997), 286 Mont. 34, 37, 952 P.2d 1385, 1387 (denial of a petition to remove the personal representative was not an abuse of discretion, despite claims of conflict of interest). A district court abuses its discretion when it acts arbitrarily without employment of conscious judgment or it exceeds the bounds of reason resulting in substantial injustice. Investigative Records of City of Columbus Pol. Dept. (1995), 272 Mont. 486, 488, 901 P.2d 565, 567.

## DISCUSSION

¶13 **Did the District Court err in appointing Kathleen Newman as personal representative of the estate of Fred W. Zempel, Jr.?**

¶14 Palmer argues that the District Court erred in appointing Newman personal representative in light of the conflict of interest that arose from the documents purportedly transferring estate assets to her and her husband. Montana law provides that a personal representative must act as a fiduciary and avoid conflicts of interest. Palmer argues that the District Court erred in attempting to bypass the conflict by relying on a "compromise" between the parties that never existed.

¶15 Newman argues that the District Court did not abuse its discretion. She argues that it is established under law, that the Testator's appointment of personal representative should be given great deference, and refusal to appoint should be done only when authorized by statute. Furthermore, the allegation of conflict between the personal representative and an interested party can be remedied by the District Court's supervision of the estate's administration. Newman points out that conflicts of interests between a personal representative and other interested parties are common, and can usually be dealt with by court supervision.

¶16 We have long held that a personal representative should not be removed except for good cause shown. Tice's Estate v. Tice (1962), 140 Mont. 28, 35, 367 P.2d 771, 774. Pursuant to § 72-3-526(2), MCA, a district court may find good cause for removal of the personal representative:

> (a) when removal would be in the best interests of the estate; or

> (b) if it is shown that a personal representative or the person seeking his appointment intentionally misrepresented material facts in the proceedings leading to his appointment or that the personal representative has disregarded an order of the court, has become incapable of discharging the duties of his office, or has mismanaged the estate or failed to perform any duty pertaining to the office.

¶17 Palmer argues that by applying this standard, it is clear that it is in the best interest of this estate to remove Newman due to her conflict of interest. She argues that the conflict over the option contract and the contract for deed, both involving the ranch property, places Newman in an irreconcilable conflict of interest. Palmer presents evidence and argument to demonstrate the extent of the dispute over these documents. Palmer asserts that as a fiduciary, a personal representative must never deal with estate property for her own benefit or take part in any transaction in which the personal representative has an adverse interest to the beneficiary.

¶18 We agree with Palmer that a conflict of interest is sufficient for removal of a personal representative for cause under § 72-3-526, MCA. Matter of Estate of Peterson (1994), 265 Mont. 104, 109, 874 P.2d 1230, 1233 (district court properly removed a personal representative who testified that he would not pursue a claim against himself). This is not to say, however, that a conflict of interest mandates the removal of a personal representative. Our statute effectively deals with issues of conflict of interest involving transactions between personal representatives and the estate. Section 72-3-615, MCA, provides:

> Any sale or encumbrance to the personal representative, his spouse, agent, or attorney or any corporation or trust in which he has a substantial beneficial interest or any transaction which is affected by a substantial conflict of interest on the part of the personal representative is voidable by any person interested in the estate except one who has consented after fair disclosure, unless:

(1) the will or a contract entered into by the decedent expressly authorized the transaction; or

(2) *the transaction is approved by the court after notice to interested persons.*

Section 72-3-615, MCA (emphasis added).

¶19 Newman argues that the District Court implemented § 72-3-615(2), MCA, in its September 4, 1997, order, and effectively cured any allegations of conflict of interest by requiring its approval of the real estate transaction between the personal representative and the estate. A transaction involving a conflict of interest between a personal representative and the estate can be cured by court ordered supervision of the transaction. In re Estate of Goick (1996), 275 Mont. 13, 22, 909 P.2d 1165, 1170. We agree with the District Court.

¶20 Palmer attempts to distinguish *Goick*, and argues that because she is the only beneficiary and she does not consent to Newman's appointment that this case is factually different. Palmer also points out that the personal representative in *Goick* benefitted from the maximizing of the estate where here Newman does not. She argues that this requires the District Court to take a much more active role in supervising the ranch transaction. We disagree.

¶21 In *Goick*, the district court cured a conflict of interest by prohibiting the personal representative from taking any substantive action without the court's approval. We held that this court ordered supervision of the estate's administration protected the other interested parties. *Goick*, 275 Mont. at 22, 909 P.2d at 1170. Here, the District Court required its approval for the final transaction between the personal representative and the estate. Any objection or challenge Palmer may have, is protected through the District Court's supervision of the disputed transaction. As in *Goick*, the court ordered supervision cures the conflict of interest.

¶22 For a district court to abuse its discretion, it must act arbitrarily without the employment of conscious judgment or by exceeding the bounds of reason which results in substantial injustice. Here, the District Court considered both sides' evidence and its decision was neither arbitrary nor unjust. We conclude that the District Court did not err in appointing Newman as personal representative of the Zempel estate.

¶23 The District Court's order is affirmed.

/S/ WILLIAM E. HUNT, SR.

We Concur:

/S/ J. A. TURNAGE

/S/ KARLA M. GRAY

/S/ TERRY N. TRIEWEILER

/S/ W. WILLIAM LEAPHART